UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM CADE | ) | CASE NO.  5:13CV2017 |
| | ) | |
| Plaintiff | ) | MAGISTRATE JUDGE |
| | ) | GEORGE J. LIMBERT |
| v. | ) | |
| | ) | **MEMORANDUM AND OPINION** |
| CAROLYN W. COLVIN, | ) | |
| ACTING COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff requests judicial review of the final decision of the Commissioner of Social Security denying William Cade Supplemental Security Income (SSI).  The Plaintiff asserts that the Administrative Law Judge (ALJ) erred in his July 18, 2012 decision in finding that Plaintiff was not disabled because he could perform work that exists in significant numbers in the national economy (Tr. 17-27).  The Court finds that substantial evidence supports the ALJ's decision for the following reasons:

## I.   PROCEDURAL HISTORY

Plaintiff, William Cade, filed his application for SSI on April 21, 2010, alleging he became disabled on the date the application was filed (Tr. 19, 118-121, 132).  Plaintiff's application was denied initially and on reconsideration (Tr. 81-83, 88-94).  Plaintiff requested a hearing before an ALJ, and, on May 22, 2012, a hearing was held where Plaintiff appeared with counsel and testified

before an ALJ and Mr. Bruce Holderead, a vocational expert (VE), also testified (Tr. 32-57, 113, 116).

On July 18, 2012, the ALJ issued his decision, finding Plaintiff not to be disabled (Tr. 17-27). Plaintiff requested a review before the Appeals Council, and the Appeals Council denied Plaintiff's request for review (Tr. 1-15).    Therefore, Plaintiff has requested judicial review of the Commissioner's final decision pursuant to 42 U.S.C. Section 1383(c).

## II.    STATEMENT OF FACTS

Plaintiff was born on January 20, 1982, and as of his application on April 21, 2010, was twenty-eight years old, a younger individual under the Commissioner's regulations at 20C.F.R. Section 416.965 (Tr. 26).  He is a high school graduate (Tr. 145). After graduating from high school, Plaintiff completed training in skills and service (Tr. 145).  He performed a variety of jobs while he was attending a program sponsored by the Ohio Rehabilitation Services Commission, including busser/dishwasher, janitor, and crew member at Arby's (Tr. 155-160).  However, he was terminated from Arby's (Tr. 160).  He was no longer eligible for services on May 9, 2003, when the Commission could not locate him (Tr. 162).  However, he became eligible again on August 31, 2012 (Tr. 359).

Plaintiff stated on his work history report that he had past work experience as a dishwasher, busser, and janitor in a Cracker Barrel restaurant from August 1999 to August 2000, janitor at a McDonald's restaurant from August 2000 to August 2001, bagger in a Tops Markets grocery store for two and one-half years from August of 2003 until January of 2005 (Tr. 205).

## III.    SUMMARY OF MEDICAL EVIDENCE

For school year 1993-94, Plaintiff was evaluated under the Wechsler Intelligence Scale for Children when he was eleven years old, and he had a verbal score of 60, performance score of 60, and

full scale score of 56 (Tr. 184).  In 1995, he had a full scale score of 65 on the WISC, and in 1998, his full scale score was 62 (Tr. 271).  His reading scores were within the average range compared to his peers (Tr. 272).  His writing and math skills were in the below average range (Tr. 272).

An evaluation form in May of 2001, signed by A. Patterson, indicated that Plaintiff often attends school regularly, respects the rights of others, cooperates with others, exhibits stamina, and follows directions and classroom rules (Tr. 280).  His teacher recommended that Plaintiff receive further vocational training through the CVCC or through the Option IV work program (Tr. 280).

A.      Consultative Examination for SSI

On September 14, 2010, Jeff Rindsberg, Psy.D. performed a psychological evaluation of Plaintiff, at the request of the state agency, when Plaintiff was twenty-eight years old (Tr. 301-304). Dr. Rindsberg noted that, although Plaintiff's mother accompanied him to the evaluation, Plaintiff answered all questions and did not need his mother there for any reason (Tr. 301).

Plaintiff said that he left his job at McDonald's because he went to Hesser College for Criminal Justice classes, but was not unsuccessful (Tr. 302).  He said that he was looking for a job, but could not find one (Tr. 302).  He said that he was depressed that he could not find a job (Tr. 303).

Dr. Rindsberg indicated that Plaintiff had attended Portage Path for anger a few times, and had no history of psychiatric medication or hospitalization (Tr. 302).  Plaintiff expressed anger at his father for his abusiveness towards his mother (Tr. 302). His parents were now divorced, and Plaintiff lived with his mother and sister (Tr. 302).

Dr. Rindsberg observed that Plaintiff was calm, polite, and cooperative (Tr. 302).  Plaintiff said that he enjoyed writing, reading cookbooks, and going to the library (Tr. 303).  Dr. Rindsberg found that Plaintiff was able to spell "world" forward and backward correctly, and made three errors when subtracting serial threes from twenty (Tr. 303).  His immediate, short, and long-term recall for

3

three items was perfect (Tr. 303). His insight and judgment were fine (Tr. 303).

Dr. Rindsberg noted that on a typical day, Plaintiff went job hunting, and drove himself without difficulty (Tr. 303). Plaintiff said that he could manage his own finances, and could socialize adequately.  He had no problem with household chores. He spent his time walking, exercising, or writing music (Tr. 303).

Dr. Rindsberg noted no indication of psychosis of any kind; Plaintiff was not paranoid, did not make any delusional statements; and demonstrated no overt psychosis (Tr. 303).  Dr. Rindsberg concluded that there was no indication of major mental illness (Tr. 303).  Dr. Rindsberg estimated borderline intellectual functioning, and assessed a Global Assessment of Functioning of 60 (Tr. 304).

With respect to Plaintiff's work-related mental abilities, Dr. Rindsberg found that Plaintiff's ability to understand and follow instructions was not impaired (Tr. 304).  Plaintiff's ability to maintain attention and perform simple, repetitive tasks was mildly impaired by his intelligence (Tr. 304). Plaintiff's ability to relate to others, including fellow workers, was not impaired (Tr. 304).  Finally, Dr. Rindsberg indicated that Plaintiff's ability to withstand the stress and pressures associated with day-to-day work activities was mildly impaired by his intelligence (Tr. 304).

B.      Portage Path Behavioral Health

On August 9, 2010, psychologist Ramone Ford, Ph.D., indicated that Plaintiff was going to apply for work at the new Wal-Mart in Macedonia (Tr. 334).  On September 27, 2010, Dr. Ford indicated that Plaintiff was also seeking social security benefits (Tr. 332).  On October 8, 2010, Dr. Ford noted that Plaintiff completed a Folstein Mini Mental Status Examination, on which he scored a 24, indicating no cognitive problems (Tr. 331).  Plaintiff said that if he obtained SSI, he was going to buy a car and have his own apartment (Tr. 331).  On November 15, 2010, the psychologist noted that Plaintiff did not appear to understand that SSI was for a person unable to work, and not just a

source of income to those without a job (Tr. 327).

On November 15, 2010, Dr. Ford completed a Mental Status Questionnaire, on which he indicated that Plaintiff's speech was within normal limits, his mood was appropriate, he had no thinking disorder, his concentration was good, although he was cognitively limited, and that he had no problems with memory (Tr. 309).  Dr. Ford noted some difficulty with attention, interpreting directions, and completing tasks (Tr. 310).

Dr. Ford also completed a daily activities questionnaire, on which he indicated that Plaintiff got along well with his family and with former employers, but had some fear of co-workers and being bullied, and lacked an awareness of normal hazards (Tr. 312).  Dr. Ford noted that Plaintiff had no problems with personal hygiene, had hobbies, and was reliable about keeping appointments (Tr. 313). Dr. Ford indicated that Plaintiff was receiving behavioral treatment to improve communication and social skills (Tr. 313).

C.      Statement from Plaintiff's Grandmother

On March 14, 2011, Plaintiff's grandmother wrote that Plaintiff had lived with her after he graduated from high school and his father "put him out of their home" (Tr. 206). During that time, Plaintiff had a job at Tops grocery store, and was proud of himself (Tr. 208).  After he was laid off from Tops, he was depressed, and went to the library and learned how to use a computer (Tr. 209). She complained that she had to remind him to bathe (Tr. 212).

D.      Psychological Evaluation for Bureau of Vocational Rehabilitation

On February 29, 2012, Frederick G. Leidal, Psy.D. examined Plaintiff for the purpose of determining whether he had a "mental disorder and any resulting limitations in mental or behavioral functioning applicable to vocational rehabilitation" (Tr. 348-357).  Plaintiff told Dr. Leidal that he was interested in janitorial work (Tr. 350).

Dr. Leidal noted that Plaintiff's ability to manage money, shop, pay bills, and count change seemed functional (Tr. 350). Plaintiff's thought content was linear without loosening, irrationality, or confabulation. There was no evidence of disorganized behavior or confusion. He had a fair ability to comprehend simple verbal directions during the examination (Tr. 350). His mood was stable throughout the examination (Tr. 350).

Dr. Leidal administered the Wechsler Adult Intelligence Scale (WAIS), on which Plaintiff had a Full Scale IQ of 72, in the borderline range (Tr. 351). On the Wide Range Achievement Test, Plaintiff had a Reading Recognition score of grade 10.7, a reading comprehension score of 9.2, a spelling score of 7.9, and a math score of 3.8 (Tr. 352). Dr. Leidal noted that the dramatic difference between Plaintiff's verbal and math performance suggested a neuropsychological disorder and impairment to right brain functions since birth (Tr. 354-355). Dr. Leidal found no clear evidence of ADHD (Tr. 355). With respect to vocational planning, Dr. Leidal indicated that Plaintiff would need prompting at work to stay on task and complete tasks (Tr. 355). Dr. Leidal indicated that Plaintiff had a low average working memory and perceptual speed, and a below average to fair ability to follow simple directions and oral instructions (Tr. 355). Dr. Leidal concluded that Plaintiff would need some vocational direction, his interest in janitorial work seemed appropriate, and that his Self-Directed Research Score (SDS-R) supported some type of hands-on job, where limited social contact was required (Tr. 355).

## IV. SUMMARY OF TESTIMONY

Plaintiff testified on May 22, 2012 that he was doing volunteer work in his apartment complex, such as cleaning dumpsters and breezeways, picking trash off the ground, and, with assistance, removing heavy appliances, like refrigerators and stoves (Tr. 37). When he was not helping around the apartment building, he went to the library and looked for jobs in a hotel, such as folding clothes,

folding sheets, or janitorial work (Tr. 43).  He said that he had a valid driver's license, and had to use a computer to pass the written part of the test (Tr. 38).

Plaintiff said that he worked for a "pretty long" time at Honey Baked Ham, where he wrapped ham sandwiches in foil (Tr. 39).  He said that he could not work now because of "depression issues," but that he did not take medication for depression and saw a counselor at Portage Path once a month (Tr. 41).

Thereafter, the ALJ asked the VE to assume a hypothetical individual of Plaintiff's age and education and no past relevant work, who was limited to simple, routine, and repetitive tasks involving only simple work-related decisions with few, if any, workplace changes, limited social contact, reminders to stay on task a couple of times a day, and no exposure to hazards, such as machinery and heights, no commercial driving, and no stressful situations, such as high production quotas or fast-paced assembly line production (Tr. 51-53).

The VE responded that an individual with these limitations could perform the job of laboratory equipment cleaner, listed in the Dictionary of Occupational Titles (DOT at 382.687-022 (73,000 jobs in the national economy), salvage laborer, DOT 929.687-022 (56,000 jobs in the national economy), and linen room attendant, DOT 222.387-030 (Tr. 54).

## V.  EVIDENCE SUBMITTED TO APPEALS COUNCIL WITH REQUEST FOR REVIEW OF ALJ'S DECISION

A letter signed by Louella Pack, Medical Records Clerk from Child Guidance and Family Solutions, indicated that Plaintiff was first seen on March 13, 1991 and last seen on September 29, 1995, when he was ten years old, and that he was assigned diagnoses of Oppositional Defiant Disorder and Attention Deficit Hyperactivity Disorder during that time (Tr. 358).

A letter of August 31, 2012 from the Ohio Rehabilitation Services Commission informed

Plaintiff that he was eligible for services based on the criteria that he was limited in the functional

capacity areas of interpersonal skills, self-direction for employment outcome, and work tolerance (Tr.

359).

Records from Trumbull County Schools (Tr. 220-261) are duplicative of those that appear

previously in the transcript (Tr. 264-300), and were before the ALJ.

Ms. Cade, mother of Plaintiff, sent a letter to the Appeals Council, indicating that Plaintiff had

applied unsuccessfully for SSI in 2001, 2011, and 2012 (Tr. 216).  She reported that Plaintiff has

performed Community Service hours since 2005 in order to live with her at AMHA because he was

not going to school (Tr. 216).  She said that Plaintiff had ADD problems that were missed by the state

agency (Tr. 217).


## VI.    STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to

supplemental security income.  These steps are:

    1.    An individual who is working and engaging in substantial gainful
        activity will not be found to be "disabled" regardless of medical
        findings (Sections 20 C.F.R. 404.1520(b) and 416.920(b) (1992);

    2.    An individual who does not have a "severe impairment" will not be
        found to be "disabled" (Sections 20 C.F.R. 404.1520(c)and
        416.920(c)(1992);

    3.    If an individual is not working and is suffering from a severe
        impairment  which meets the duration requirement, *see* Sections 20
        C.F.R. 404.1509 and 416.909 (1992), and which meets or is equivalent
        to a listed impairment in Sections20 C.F.R. Pt. 404, Subpt. P, App. 1,
        a finding of disabled will be made without consideration of vocational
        factors (Sections 20 C.F.R. 404.1520(d)  and 416.920(d) (1992);

    4.    If an individual is capable of performing the kind of work he or she has
        done in the past, a finding of "not disabled" must be made (Sections 20

C.F.R. 404.1520(e) and 416.920(e) (1992);

5.      If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (Sections 20 C.F.R. 404.1520(f) and 416.920(f) (1992).

*Hogg v. Sullivan,* 987 F.2d 328, 332 (6th Cir. 1992).  The claimant has the burden of going forward with the evidence at the first four steps and the Commissioner has the burden at Step Five to show that alternate jobs in the economy are available to the claimant, considering his age, education, past work experience and residual functional capacity.  *See, Moon v. Sullivan,* 923 F.2d 1175, 1181 (6th Cir. 1990).

## VII.    STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability.  This Court's review of such a determination is limited in scope by Section 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. Section 405(g). Therefore, this Court is limited to determining whether substantial evidence supports the Commissioner's findings and whether the Commissioner applied the correct legal standards.  *See, Abbott v. Sullivan,* 905 F.2d 918, 922 (6th Cir. 1990).  The Court cannot reverse the ALJ's decision, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion.  *See, Walters v. Commissioner of Social Security,* 127 F.3d 525., 528 (6th Cir. 1997).  Substantial evidence is more than a scintilla of evidence, but less than a preponderance.  *See, Richardson v. Perales,* 402 U.S. 389, 401 (1971).  It is evidence

that a reasonable mind would accept as adequate to support the challenged conclusion. *See, id., Walters,* 127 F.3d 525, 532 (6th Cir. 1997).  Substantiality is based upon the record taken as a whole. *See, Houston v. Secretary of Health and Human Servs.,* 736 F.2d 365 (6th Cir. 1984).

Furthermore, the Sixth Circuit has held that the substantial evidence review of the ALJ's decision does not consider new evidence submitted after that decision is rendered. Instead, the Court views newly-submitted evidence only to determine whether it meets the requirements for a sentence-six remand. *See, Lee v. Commissioner of Social Security*, 5 F.App'x 3, 2012 WL 3388486 at *11-12 (6th Cir. 2013), *citing Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  Hence, evidence submitted to the Appeals Council after the ALJ's decision cannot be considered part of the record for substantial evidence review. *Id.* at 357.

## VIII.  ANALYSIS

The Plaintiff presents two issues on appeal:

I.      WHETHER THE ALJ'S DECISION LACKS SUBSTANTIAL EVIDENCE BECAUSE SHE FAILED TO EVALUATE PLAINTIFF'S CONDITIONS UNDER THE APPROPRIATE LISTING OF IMPAIRMENTS.

II.     WHETHER THE ALJ'S DECISION LACKS SUBSTANTIAL EVIDENCE BECAUSE SHE RELIED ON AN INCOMPLETE HYPOTHETICAL QUESTION TO THE VOCATIONAL EXPERT TO FIND PLAINTIFF NOT DISABLED.

For entitlement to SSI, Plaintiff must prove that he was disabled as of the date of his SSI application on April 21, 2010 through the ALJ's decision on July 18, 2012. *See* 20 C.F.R. Sections 416.200, .501.  The Court finds that Plaintiff did not prove that he was entitled to SSI as of the ALJ's decision on July 18, 2012.  To be eligible for SSI, Plaintiff has the burden of proof to show not only

that he has a medically-determinable impairment, but that it is so severe that it prevents him from engaging in his past relevant work or any other substantial gainful activity that exists in the national economy.  42 U.S.C. Sections 423(d)(1)(A), (d)(2)(A), (B).

The ALJ correctly relied upon VE testimony to find that alternative work existed that Plaintiff could perform, including the representative examples of cleaner of laboratory equipment, salvage laborer, and linen room attendant (Tr. 26).  The hypothetical question that the ALJ posed to the VE included Plaintiff's substantial limitations.  Hence, the Commissioner obtained relevant evidence from the VE of work that exists in the national economy that Plaintiff could perform.

Thereafter, the ALJ asked the VE to assume that Plaintiff had a very restrictive mental residual functional capacity (RFC), including a restriction to very simple, routine, repetitive tasks involving only simple work-related decisions; with reminders to stay on task a couple of times a day; few, if any, workplace changes; limited social contact; no exposure to hazards, such as machinery and heights; no commercial driving; and no stressful situations, such as high production quotas or fast-paced assembly line production (Tr. 51-53).  The VE correctly responded that an individual with those limitations could perform the job of laboratory equipment cleaner, salvage laborer, and linen room attendant (Tr. 54).

The ALJ's RFC is supported by substantial evidence in the record, including the examination of Dr. Rindsberg on September 14, 2010.  Dr. Rindsberg found that Plaintiff was able to spell "world" forward and backward correctly, and that his immediate, short, and long-term recall for three items was perfect (Tr. 303).  His insight and judgment were fine (Tr. 303).

Dr. Rindsberg also noted that there were days that Plaintiff went job hunting, and drove himself without difficulty (Tr. 303).  Plaintiff said that he could manage his own finances, and could socialize adequately.  He had no problem with household chores (Tr. 303). Dr. Rindsberg found no

11

major mental illnesses (Tr. 3030.  Dr. Rindsberg estimated borderline intellectual functioning, and assessed a GAF of 60, which is at the high end of the moderate scale (Tr. 304).  In regard to Plaintiff's work-related mental abilities, Dr. Rindsberg found that Plaintiff's ability to understand and follow instructions was not impaired, and that his ability to maintain attention and perform simple, repetitive tasks was only mildly impaired by his intelligence (Tr. 304).  Dr. Rindsberg indicated that Plaintiff's ability to withstand the stress and pressures associated with day-to-day activities was only mildly impaired by his intelligence (Tr. 304). The ALJ's RFC is supported by Dr. Rindsberg's evaluation.

Furthermore, the ALJ's RFC is supported by the treatment notes of Plaintiff's psychologist, Dr. Ford, who noted that Plaintiff completed a Folstein Mine Mental Status Examination, on which he scored a 24, indicating no cognitive problems (Tr. 331).  Dr. Ford completed a Mental Status Questionnaire, on which he indicated that Plaintiff's speech was within normal limits, his mood was appropriate, he had no thinking disorder, he was cognitively limited, but his concentration was good, and he had no problems with memory (Tr. 309).  Dr. Ford also completed a daily activities questionnaire, on which he indicated that Plaintiff got along well with his family and with former employers (Tr. 312).  Dr. Ford noted that Plaintiff had no problems with personal hygiene, had hobbies, and was reliable about keeping appointments (Tr. 313).  Hence, the ALJ's RFC is also supported by Dr. Ford's examination.

In addition, the ALJ's RFC is supported by the examination of Dr. Leidal, who found that Plaintiff's ability to manage money, shop, pay bills, and count change seemed functional (Tr. 350).  Plaintiff's thought content showed no evidence of disorganization or confusion.  He had a fair ability to comprehend simple verbal directions during the examination (Tr. 350).  His mood was stable throughout the examination (Tr. 350).  Dr. Leidal found no clear evidence of ADHD (Tr. 355).  Plaintiff was able to concentrate sufficiently on the Wide Range Achievement Test to achieve a

Reading Recognition score of grade 10.7, a reading comprehension score of 9.2, and a spelling score of 7.9 (Tr. 352).

Dr. Leidal opined that Plaintiff had a low average working memory and perceptual speed, and a below average to fair ability to follow simple directions and oral instructions, but did not rule out employment (Tr. 355).  Actually, Dr. Leidal concluded that Plaintiff's interest in janitorial work seemed appropriate, and that his Self-Directed Research Score (SDS-R) supported some type of hands-on job where limited social contact was required (Tr. 355).  The ALJ properly incorporated Dr. Leidal's need for reminders to complete tasks into his hypothetical question, as well as the limitation on social contact (Tr. 52-53).  Hence, the ALJ's RFC is also supported by Dr. Leidal's examination.

The ALJ's RFC determination correctly accounted for Plaintiff's deficits in maintaining attention, concentration, and pace (Pl.'s Br. at 14).  A limitation to simple, repetitive tasks is an adequate description in a hypothetical question to an individual with moderate limitations on concentration, persistence, or pace.  Hence, the Court finds that the hypothetical question was not defective, as claimed by Plaintiff.  Here, the ALJ included a limitation to simple, repetitive tasks, which was all that is required to accommodate moderate limitations on concentration, persistence, or pace.  *See, e.g., Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977. 982 (6th Cir. 2011).

In this case, the ALJ posed a hypothetical question that correctly accommodated Plaintiff's limitations.  Hence, the ALJ elicited from the VE valid vocational evidence of work that exists in the national economy that Plaintiff could perform, at Step Five of the sequential evaluation process.  *See,* 20 C.F.R. Section 419.912(g).

Finally, Dr. Leidal found that Plaintiff had a Full Scale IQ of 72, which is in the borderline range, not the mentally retarded range (Tr. 351).  Plaintiff contends that he meets or equals Listing 12.05C, a mental retardation listing, which requires an IQ score of between sixty to seventy and demonstration of deficits in adaptive functioning before age twenty-two, as well as another significant

impairment.  Dr. Leidal's IQ testing results do not fall under the Listing.  Furthermore, Dr. Leidal's scores reflect Plaintiff's intellectual functioning as an adult.  The Plaintiff cannot rely upon IQ scores obtained when he was younger to establish that he meets or equals a mental retardation listing, and current scores do not support mental retardation.  20 C.F.R. Pt. 404 Subpt. P, Section 112(c)(10).

In addition, Plaintiff has not proven that he had the deficits in adaptive functioning that are necessary to prove that he meets or equals 12.05C.  Plaintiff is able to care for his personal hygiene without assistance, prepares simple meals, can do household chores, and is able to drive (Tr. 25). Furthermore, he held down a job for over two years as a bagger at Tops Market (Tr. 25).

As the ALJ also noted, Plaintiff did not meet or equal Listing 12.02 for organic medical disorders (Tr. 21-22).  The ALJ correctly relied upon the state agency consulting psychologists, Aracelis Rivera, Psy.D. and Leslie Rudy, Ph.D., who determined that Plaintiff had mild restriction of activities of daily living, no difficulties maintaining social functioning, moderate difficulty in maintaining concentration, persistence, or pace, and no episodes of decompensation (Tr. 22, 62-67, 69-79).  Hence, Plaintiff's impairment did not result in at least two "marked" limitations required to meet paragraph B of 12.02.  The ALJ also relied upon the state agency psychological consultants to find that Plaintiff did not meet severity of the listing criteria.  The Court also concludes that an ALJ may rely upon the opinion of a trained state agency psychologist who has considered a claimant's limitations and concluded that they would not preclude the ability to work.  *See, e.g., Infantado v. Astrue*, 263 F. App'x 469, 477 (6th Cir. 2008).

Therefore, the Court finds that substantial evidence supports the ALJ's decision that Plaintiff was not disabled, and, therefore, not entitled to SSI.

## IX.    CONCLUSION

Based upon a review of the  record and law, the undersigned affirms the ALJ's decision.

14

Substantial evidence supports the finding of the ALJ that Plaintiff retained the residual functional capacity (RFC) to perform work that exists in significant numbers in the national economy, and, therefore, was not disabled.  Hence, he is not entitled to SSI.


Dated: October 31, 2014                                    */s/George J. Limbert*
                                                       GEORGE J. LIMBERT
                                                       UNITED STATES MAGISTRATE JUDGE